**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **LISA CARTER AND DEBANE CARTER, individually and on behalf of all others similarly situated,**<br><br>*Plaintiffs*<br><br>**VERSUS**<br><br>**IDSCAN.NET, INC.,**<br><br>*Defendant* | **CIVIL ACTION NO. 26-1983**<br><br>**JUDGE: ___________________**<br><br>**MAGISTRATE JUDGE:**<br>**___________________________** |

**CLASS ACTION COMPLAINT**

Plaintiffs Lisa Carter and Debane Carter (together "Plaintiffs"), by and through their undersigned counsel, individually and on behalf of all others similarly situated, bring this Class Action Complaint against Defendant IDScan.net, Inc. ("Defendant" or "IDScan"), and its present, former, or future direct and indirect parent companies, subsidiaries, affiliates, agents, and/or other related entities. Plaintiffs make these allegations upon personal knowledge as to their own acts and experiences, and upon information and belief and the investigation of counsel as to all other matters.

## I. NATURE OF THE ACTION

1. This is a class action arising from Defendant IDScan.net, Inc.'s failure to implement and maintain reasonable data security measures to protect the highly sensitive, personally

identifiable information ("PII" or "Private Information") of Plaintiffs and millions of other individuals across the country.

2. Defendant is an identity verification and ID-scanning technology company headquartered in New Orleans, Louisiana. Businesses across numerous industries — including retail, hospitality, and other establishments that check and record customer identification — use Defendant's products and services to scan, authenticate, and store government-issued identification documents presented by their customers and patrons.

3. Upon information and belief, Defendant recently suffered a significant cybersecurity incident involving unauthorized access to its information technology network (the "Data Breach"). The Data Breach resulted in the compromise and exfiltration of an extraordinary volume of highly sensitive identification records, including more than 153 million scans of driver's licenses, more than 10 million state identification cards, more than three million travel documents and international identification documents, and at least 579,000 medical cards, including marijuana-dispensary cards. The compromised records reportedly include high-resolution images of the front and back of identification documents, as well as infrared and ultraviolet scans.

4. The Data Breach came to light on or about September 1–2, 2026, after the compromised records appeared for sale on a dark-web service known as "Nexus," advertised on the Russian-language cybercrime forum Exploit as offering searchable access to the identity records of more than 170 million people in North America.

5. Plaintiffs Lisa Carter and Debane Carter, residents of Oklahoma City, Oklahoma, each had their government-issued identification scanned at commercial establishments in Oklahoma

City that, upon information and belief, use Defendant's identity-verification and ID-scanning products and services. Plaintiffs' Private Information was collected, transmitted, and/or stored by or through Defendant's systems in the ordinary course of those transactions.

6. Upon information and belief, cybercriminals were able to infiltrate Defendant's systems because Defendant failed to adequately train its employees on cybersecurity, failed to adequately monitor and oversee its agents, contractors, vendors, and suppliers in the handling and securing of Private Information, and failed to maintain reasonable security safeguards and protocols to protect the Private Information of Plaintiffs and the Class, rendering that information an easy target for cybercriminals.

7. As of the filing of this Complaint, Defendant has not provided Plaintiffs or the Class with timely and adequate notice of the Data Breach, leaving Plaintiffs and Class Members without meaningful warning to monitor their accounts, credit, and identities for signs of misuse.

8. As a direct and proximate result of the Data Breach, Plaintiffs and Class Members have suffered actual and present injuries, including but not limited to: (a) present, certainly impending, and continuing risk of identity theft, fraud, scams, and other misuse of their Private Information; (b) diminution of the value of their Private Information; (c) loss of the benefit of the bargain; (d) loss of privacy and confidentiality; (e) the illegal sale of their Private Information on the dark web; (f) mitigation expenses and time spent responding to and remedying the effects of the Data Breach; (g) out-of-pocket costs; (h) expenses associated with credit freezes, unfreezes, and fraud alerts; and (i) anxiety, annoyance, and continued risk stemming from Defendant's continued possession of their Private Information.

9. Plaintiffs and Class Members must now devote substantially more time, money, and energy than they otherwise would to protect themselves from the increased and certainly impending risk of fraud and identity theft caused by Defendant's conduct — a risk that may persist for the rest of their lives.

10. Plaintiffs bring claims for negligence, unjust enrichment, and breach of implied contract, seeking damages and injunctive relief, including an order requiring Defendant to adopt data security practices sufficient to prevent a recurrence of the Data Breach.

## II. PARTIES

11. Plaintiff Lisa Carter is, and at all relevant times has been, a resident and citizen of the State of Oklahoma, residing in Oklahoma City, Oklahoma, where she intends to remain.

12. Plaintiff Debane Carter is, and at all relevant times has been, a resident and citizen of the State of Oklahoma, residing in Oklahoma City, Oklahoma, where he intends to remain.

13. Defendant IDScan.net, Inc. is a corporation organized under the laws of the State of Delaware with its principal place of business at 2045 Lakeshore Drive, Suite 526, New Orleans, Louisiana 70122. Defendant is therefore a citizen of Delaware and Louisiana for purposes of 28 U.S.C. § 1332(c)(1).

## III. JURISDICTION AND VENUE

14. This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs, the proposed Class has more than 100 members, and minimal diversity exists because Plaintiffs are citizens of Oklahoma and Defendant is a citizen of Delaware and Louisiana.

15. This Court has general personal jurisdiction over Defendant because Defendant is headquartered in, and regularly conducts business in, this District.

16. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) because Defendant resides in this District, and the acts and omissions giving rise to Plaintiffs' and Class Members' claims occurred in and emanated from this District.

## IV. FACTUAL ALLEGATIONS

### A. Defendant's Business

17. Defendant is an identity verification and ID-scanning technology company that provides hardware, software, and related services enabling businesses to scan, capture, and authenticate government-issued identification documents, verify customer age, and detect fraudulent identification.

18. In the ordinary course of its business, Defendant collects, receives, transmits, and/or stores the Private Information of individuals whose identification is scanned by Defendant's business clients, including establishments in Oklahoma City, Oklahoma patronized by Plaintiffs.

19. Upon information and belief, Defendant represented, whether directly or through its business clients, that it would maintain the confidentiality of the Private Information it collects, comply with applicable data-security laws and regulations, and refrain from using or disclosing that information except for legitimate business purposes.

20. Plaintiffs and Class Members took reasonable steps to safeguard their own Private Information and reasonably relied on Defendant to responsibly secure and protect any Private Information collected through the ID-scanning process.

21. Defendant owed Plaintiffs and Class Members a duty to provide reasonable security consistent with industry standards, sufficient to ensure that its computer systems, networks, and protocols adequately protected their Private Information from unauthorized access and disclosure.

**B. The Data Breach**

22. Upon information and belief, Defendant experienced a significant cybersecurity incident involving unauthorized access to its information technology network, resulting in the compromise and exfiltration of an extraordinary volume of sensitive identification information belonging to Plaintiffs and Class Members.

23. The Data Breach was publicly reported on or about September 1–2, 2026, after the compromised information appeared for sale on the dark web through the "Nexus" service, which a newly registered user advertised on the Exploit cybercrime forum as providing searchable access to the identity records of more than 170 million people in North America.

24. The compromised information reportedly includes more than 153 million scans of driver's licenses, more than 10 million state identification cards, more than three million travel documents and international identification documents, and at least 579,000 medical cards, including marijuana-dispensary cards, together with high-resolution front-and-back images and infrared and ultraviolet scans used by banks, government agencies, and other institutions to authenticate identification and detect counterfeits.

25. Upon information and belief, despite its duty to safeguard the Private Information entrusted to it, Defendant failed to implement and maintain reasonable and appropriate

safeguards to protect Plaintiffs' and Class Members' Private Information from unauthorized access and acquisition, permitting cybercriminals to obtain and exfiltrate that information.

26. As of the filing of this Complaint, Defendant has not provided Plaintiffs, Class Members, or the public with timely and adequate notice of the scope, cause, or nature of the Data Breach.

27. As a direct and proximate result of Defendant's failures, Plaintiffs and Class Members have lost control over sensitive identification information they reasonably entrusted to Defendant and now face an ongoing, heightened risk of identity theft, fraud, impersonation, and other misuse of their Private Information.

**C. Defendant Collects and Stores Plaintiffs' and Class Members' Private Information**

28. Plaintiffs and Class Members did not have a direct business relationship with Defendant. Rather, in the ordinary course of everyday commercial transactions — such as presenting identification at retail, hospitality, or other commercial establishments in Oklahoma City that use Defendant's ID-scanning technology — Plaintiffs' and Class Members' Private Information was captured, transmitted to, and/or stored by Defendant.

29. Defendant derives substantial economic benefit from collecting, processing, and storing this Private Information in connection with the identity-verification services it sells to its business clients.

30. By collecting, transmitting, and storing the Private Information of Plaintiffs and Class Members, Defendant assumed legal and equitable duties to safeguard that information from unauthorized access, disclosure, and misuse.

31. The Data Breach was foreseeable and preventable. Defendant could have materially reduced or eliminated the risk of the Data Breach by implementing reasonable cybersecurity measures, including encrypting the sensitive identification data and images in its possession and adequately securing the systems and databases in which that data was stored.

**D. The Value of Private Information and the Effects of Unauthorized Disclosure**

32. Defendant knew, or should have known, that the Private Information it collects — including scanned images of government-issued identification — is of substantial value to criminals and is routinely bought and sold on the dark web.

33. Stolen Private Information, including scanned identification documents, is regularly offered for sale on dark-web marketplaces, with individual records and full data sets commanding significant prices depending on the completeness and sensitivity of the information.

34. Identity thieves use stolen Private Information, particularly scanned government identification, to commit a range of crimes, including opening fraudulent accounts, obtaining government benefits, filing fraudulent tax returns, and creating counterfeit identification documents capable of defeating bank and other institutional verification checks.

35. The harm from identity theft may not manifest for months or years after a breach. According to the U.S. Government Accountability Office, stolen data may be held for a year or more before being used to commit identity theft, and fraudulent use of stolen data may continue for years after it is first sold or posted online.

**E. Defendant Failed to Comply with Regulatory Requirements and Industry Standards**

36. Numerous federal and state laws, regulations, and industry standards require businesses that collect, store, or maintain Private Information to implement and maintain

reasonable security procedures and practices designed to protect that information from unauthorized access, disclosure, and misuse.

37. The Federal Trade Commission has repeatedly emphasized that reasonable data security is a necessary component of responsible business practice, and has treated the failure to maintain reasonable and appropriate data security for sensitive personal information as an unfair practice in violation of Section 5 of the FTC Act, 15 U.S.C. § 45.

38. Among other things, the FTC's published guidance for businesses recommends that companies encrypt sensitive information, understand and remediate network vulnerabilities, limit access to sensitive data, monitor networks for intrusions, maintain an incident-response plan, and provide immediate notification to individuals affected by a data breach.

39. Widely recognized cybersecurity frameworks, including the Center for Internet Security's Critical Security Controls, likewise identify baseline safeguards — such as secure system configuration, robust access controls, timely vulnerability remediation, and encryption of data at rest and in transit — that organizations handling sensitive Private Information, including Defendant, are expected to follow.

40. Upon information and belief, Defendant failed to comply with these regulatory expectations and widely accepted industry standards, thereby failing to adequately protect the Private Information of Plaintiffs and Class Members.

**F. Plaintiffs' Experiences**

41. Plaintiffs Lisa Carter and Debane Carter each presented their government-issued identification for scanning at one or more commercial establishments in Oklahoma City, Oklahoma that, upon information and belief, use Defendant's ID-scanning products and services.

42. Upon information and belief, Defendant collected, transmitted, and/or stored Plaintiffs' Private Information, including images of their government-issued identification, in connection with those transactions.

43. Plaintiffs are careful about sharing their sensitive Private Information, and neither Plaintiff has knowingly transmitted their unencrypted Private Information over the internet or any other unsecured channel.

44. Plaintiffs reasonably expected that any entity collecting or storing their Private Information in connection with the ID-scanning process, including Defendant, would employ reasonable measures to protect that information.

45. Upon information and belief, Plaintiffs' Private Information — including their names and driver's license numbers and images — was compromised in the Data Breach and has been, or is at imminent risk of being, published or sold by cybercriminals on the dark web.

46. Since learning of the Data Breach, Plaintiffs have spent, and continue to spend, valuable time and effort monitoring their financial and credit accounts, reviewing statements for signs of fraud, and taking other precautionary measures they would not otherwise have needed to take.

47. Plaintiffs have suffered actual injury as a result of the Data Breach, including mitigation efforts undertaken to protect their accounts and identities, diminution in the value of their Private Information, loss of privacy, and anxiety and stress arising from the knowledge that their sensitive identification information is in the hands of unknown cybercriminals and may be used against them at any time in the future.

**G. Plaintiffs and Class Members Suffered Damages**

48. Given the sensitivity of the Private Information involved in the Data Breach, Plaintiffs and Class Members have suffered damages and face a substantial risk of additional injury for years to come, if not for the rest of their lives.

49. Defendant has not compensated Plaintiffs or Class Members for the injuries they have already suffered, and has not demonstrated that it has taken adequate steps to prevent further harm.

50. As a direct and proximate result of Defendant's conduct, Plaintiffs and Class Members have been placed at a present, immediate, and continuing increased risk of fraud and identity theft, and have been forced to spend time and money addressing the effects of the Data Breach, including through credit monitoring, credit freezes and unfreezes, fraud alerts, and review of financial accounts and statements.

51. Plaintiffs and Class Members also have an ongoing interest in ensuring that any Private Information that remains in Defendant's possession is adequately protected from further unauthorized access and disclosure.

52. As a further direct and proximate result of Defendant's conduct, Plaintiffs and Class Members have suffered anxiety, emotional distress, loss of time, loss of privacy, and an increased risk of future harm.

## V. CLASS ACTION ALLEGATIONS

53. Plaintiffs bring this action individually and on behalf of a nationwide class pursuant to Federal Rules of Civil Procedure 23(a) and 23(b), defined as follows:

> *All individuals residing in the United States whose Private Information was compromised in the Data Breach (the "Class").*

54. Plaintiffs also seek to represent the following subclass:

> *All individuals residing in Oklahoma whose Private Information was compromised in the Data Breach (the "Oklahoma Subclass").*

55. Excluded from the Class and Subclass are Defendant, its subsidiaries and affiliates, officers, directors, and members of their immediate families, any entity in which Defendant has a controlling interest, the legal representatives, heirs, successors, or assigns of any excluded party, and the judicial officer(s) to whom this action is assigned and members of their immediate families.

56. Plaintiffs reserve the right to amend or modify the Class and Subclass definitions prior to moving for class certification.

57. Numerosity. The Class and Subclass are so numerous that joinder of all members would be impracticable. Upon information and belief, and based on public reporting regarding the scale of the Data Breach, the Class numbers at least in the hundreds of thousands, and likely millions, of individuals. The exact size of the Class and Subclass, and the identities of individual members, are ascertainable through Defendant's own records, including the records implicated in the Data Breach.

58. Commonality. This action involves questions of law and fact common to Plaintiffs and the Class and Subclass, including, without limitation:

a. whether Defendant owed a duty to Plaintiffs and Class Members to protect their Private Information;

b. whether Defendant was negligent in collecting, transmitting, and storing Plaintiffs' and Class Members' Private Information;

c. whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the Private Information at issue;

d. whether Defendant's conduct constitutes a breach of the duties Defendant owed to Plaintiffs and Class Members;

e. whether Defendant failed to provide timely and adequate notice of the Data Breach;

f. whether Plaintiffs and Class Members are entitled to damages as a result of Defendant's conduct; and

g. whether Plaintiffs and Class Members are entitled to injunctive and/or declaratory relief.

59. Typicality. Plaintiffs' claims are typical of the claims of the Class and Subclass. Plaintiffs' claims, like those of every other Class Member, arise from the same course of conduct by Defendant and are based on the same legal theories.

60. Adequacy of Representation. Plaintiffs will fairly and adequately protect the interests of the Class and Subclass. Plaintiffs' interests do not conflict with the interests of other members, Plaintiffs have retained counsel experienced in complex class action and data breach litigation, and Plaintiffs intend to prosecute this action vigorously.

61. Predominance. Common questions of law and fact predominate over any questions affecting only individual members. Defendant's liability arises from a single, uniform course of conduct applicable equally to Plaintiffs and all Class Members.

62. Superiority. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Individual litigation of the claims of all Class Members is impracticable, and class treatment will conserve judicial resources, promote consistency, and provide a fair mechanism for redress.

63. Ascertainability. Members of the Class and Subclass are readily ascertainable through objective criteria, including Defendant's own business records and the records implicated in the Data Breach.

## VI. CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF
### NEGLIGENCE
(On Behalf of Plaintiffs and the Class)

64. Plaintiffs reallege and incorporate by reference all preceding paragraphs as though fully set forth herein.

65. Defendant owed a duty to Plaintiffs and Class Members to exercise reasonable care in collecting, transmitting, storing, safeguarding, and protecting their Private Information from unauthorized access, disclosure, and misuse.

66. This duty included, among other things: (a) designing, maintaining, and testing Defendant's computer systems to ensure that Private Information in Defendant's possession was adequately secured; (b) implementing processes to detect a security breach in a timely manner;

(c) timely acting upon warnings and alerts of intrusions into its networks; and (d) maintaining data security measures consistent with applicable industry standards.

67. Defendant's duty arose because Plaintiffs and Class Members were the foreseeable and probable victims of any inadequate security practices on Defendant's part. By collecting and storing valuable Private Information that is routinely targeted by cybercriminals, Defendant was obligated to act with reasonable care to guard against that foreseeable risk.

68. Defendant breached its duties to Plaintiffs and Class Members by, among other things: (a) failing to identify and remediate reasonably foreseeable risks to the security and confidentiality of the Private Information in its possession; (b) failing to implement and test adequate technical and organizational safeguards; (c) failing to adequately train and supervise its employees, contractors, and vendors with access to sensitive systems and data; (d) failing to detect the Data Breach in a timely manner; and (e) failing to provide Plaintiffs and Class Members with timely and adequate notice of the Data Breach.

69. But for Defendant's negligent breach of its duties, Plaintiffs' and Class Members' Private Information would not have been accessed, exfiltrated, and exposed by cybercriminals.

70. As a direct and proximate result of Defendant's negligence, Plaintiffs and Class Members have suffered injury, including but not limited to: theft of their Private Information; costs associated with credit freezes, credit monitoring, and identity theft protection; time and productivity lost mitigating the effects of the Data Breach; diminution in the value of their Private Information; and the continued and certainly impending risk of identity theft and fraud posed by their Private Information remaining in the hands of criminals.

71. Plaintiffs and Class Members are entitled to compensatory, and where applicable punitive and/or nominal, damages in an amount to be proven at trial.

**SECOND CLAIM FOR RELIEF**
**UNJUST ENRICHMENT**
(On Behalf of Plaintiffs and the Class)

72. Plaintiffs reallege and incorporate by reference all preceding paragraphs as though fully set forth herein.

73. Plaintiffs and Class Members conferred a benefit on Defendant by providing, directly or indirectly, their valuable Private Information, which Defendant collected, used, and monetized in connection with the identity-verification services it sells to its business clients.

74. Defendant knew that it received this benefit and voluntarily accepted and retained it.

75. Defendant failed to adequately secure Plaintiffs' and Class Members' Private Information, and thus did not provide the commensurate data-security protections that Plaintiffs and Class Members reasonably expected in exchange for entrusting Defendant, directly or indirectly, with their Private Information.

76. Had Plaintiffs and Class Members known that Defendant would not adequately secure their Private Information, they would not have permitted their identification to be scanned and processed through Defendant's systems, or would have demanded greater protections before doing so.

77. Under the circumstances alleged herein, it would be inequitable for Defendant to retain the benefits it obtained from Plaintiffs' and Class Members' Private Information without adequately compensating them.

78. Plaintiffs and Class Members are without an adequate remedy at law and are entitled to restitution and/or disgorgement of the profits and benefits Defendant obtained as a result of its inequitable conduct.

**THIRD CLAIM FOR RELIEF**
**BREACH OF IMPLIED CONTRACT**
(On Behalf of Plaintiffs and the Class)

79. Plaintiffs reallege and incorporate by reference all preceding paragraphs as though fully set forth herein.

80. In presenting their government-issued identification for scanning in connection with commercial transactions, Plaintiffs and Class Members entered into implied contracts with Defendant, pursuant to which Defendant agreed to safeguard and protect their Private Information, to keep it secure and confidential, and to provide timely and accurate notice in the event that information was compromised.

81. At the time Defendant collected the Private Information of Plaintiffs and Class Members, there was a meeting of the minds and mutual understanding that Defendant would safeguard that information and would not take unjustified risks in storing or securing it.

82. Implicit in this agreement was Defendant's obligation to: (a) use Plaintiffs' and Class Members' Private Information only for legitimate business purposes; (b) take reasonable steps to safeguard that information; (c) prevent unauthorized access to and disclosure of that information; (d) provide prompt and sufficient notice of any unauthorized access to or theft of that information; and (e) retain that information only under conditions that kept it secure and confidential.

83. Plaintiffs and Class Members fully performed their obligations under the implied contract.

84. Defendant breached the implied contract by failing to safeguard and protect Plaintiffs' and Class Members' Private Information, and by failing to provide timely and accurate notice that their Private Information had been compromised in the Data Breach.

85. As a direct and proximate result of Defendant's breach, Plaintiffs and Class Members have suffered, and will continue to suffer, damages including invasion of privacy, compromise of their Private Information, lost time and money spent mitigating the consequences of the Data Breach, diminished value of their Private Information, loss of the benefit of their bargain, and the continued and increased risk to their Private Information for so long as it remains inadequately protected in Defendant's possession.

86. Plaintiffs and Class Members are entitled to recover actual, consequential, and nominal damages to be determined at trial.

## VII. PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, individually and on behalf of all others similarly situated, respectfully request that this Court enter judgment in their favor and against Defendant as follows:

A. Certifying this action as a class action, appointing Plaintiffs as Class representatives, and appointing Plaintiffs' counsel as Class Counsel;

B. Entering judgment in favor of Plaintiffs and the Class on all claims asserted herein;

C. Awarding damages, including compensatory, consequential, and nominal damages, in an amount to be determined at trial;

D. Awarding restitution and all other available forms of equitable monetary relief;

E. Awarding appropriate declaratory and injunctive relief, including an order requiring Defendant to implement and maintain reasonable data security measures sufficient to protect Class Members' Private Information going forward;

F. Awarding Plaintiffs and the Class reasonable attorneys' fees, costs, and expenses;

G. Awarding pre- and post-judgment interest on any amounts awarded; and

H. Granting such other and further relief as the Court deems just and proper.

## VIII. JURY TRIAL DEMANDED

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury on all issues so triable.

Dated: September 09, 2026

Respectfully Submitted,

/s/ Jeffrey P. Berniard______
Jeffrey P. Berniard (#29088)
Berniard Law Firm,L.L.C.
1140 St. Charles Ave.
New Orleans, LA 70130
Telephone: (504) 521-6000
Email: Jeff@GetJeff.Com
All Pleadings and Correspondence may be served by Email only via email address: Jeff@GetJeff.com
Attorneys for Plaintiffs and the Proposed Class